## THEBO v. CHOCTAW TRIBE OF INDIANS et al.

(Circuit Court of Appeals, Eighth Circuit. January 2, 1895.)

### No. 453.

COURTS—JURISDICTION—CHOCTAW NATION.

The United States court in the Indian Territory has no jurisdiction of an action against the Choctaw Nation, or the chief executive officers thereof, when sued in their capacity as such, for an alleged debt or liability of the Nation, and when the judgment will operate against the Nation.

In Error to the Circuit Court of the United States in the Indian Territory.

Wm. H. H. Clayton, James Brizzolara, and J. B. Forrester, for plaintiff in error.

S. W. Peel (G. G. Randell, on the brief), for defendants in error,

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. This was an action brought in the United States court in the Indian Territory by the plaintiff in error, George S. Thebo, a white man, and citizen of the United States, against the defendants in error, the Choctaw Nation, Wilson N. Jones, as principal chief of the Nation, and Green McCurtain, as its treasurer, to recover the sum of $110,349.37 for attorney's fees alleged to be due the plaintiff for professional services rendered the Nation. The defendants demurred to the complaint upon two grounds, one of which—and the only one we find it necessary to consider—is that the court had no jurisdiction of the persons of the defendants or the subject-matter of the action. The lower court sustained the demurrer, and rendered final judgment for the defendants, and the plaintiff sued out this writ of error.

The act establishing the United States court in the Indian Territory (section 6, act approved March 1, 1889; 25 Stat. 783) defined its jurisdiction as follows:

"That the court hereby established shall have jurisdiction in all civil cases between citizens of the United States who are residents of the Indian Territory, or between citizens of the United States or of any state or territory therein, and any citizen of or person or persons residing or found in the Indian Territory, and when the value of the thing in controversy, or damages or money claimed shall amount to one hundred dollars or more."

By act of congress approved May 2, 1890 (26 Stat. 93), its jurisdiction was defined as follows:

"That the court established by said act [act of March 1, 1889] shall, in addition to the jurisdiction conferred thereon by said act, have and exercise within the limits of the Indian Territory jurisdiction in all civil cases in the Indian Territory, except cases over which the tribal courts have exclusive jurisdiction: and in all cases on contracts entered into by citizens of any tribe or nations with citizens of the United States in good faith and for valuable consideration, and in accordance with the laws of such tribe or nation, and such contract shall be deemed valid and enforced by such courts."

It is clear that neither of these acts conferred on that court jurisdiction of an action against the Choctaw Nation, or the chief executive officers of the Nation, when sued in their capacity as such, for an alleged debt or liability of the Nation, and when the judgment will operate against the Nation. It may be conceded that it would be competent for congress to authorize suit to be brought against the Choctaw Nation upon any and all the causes of action in any court it might designate. Acts of congress have been passed, specially conferring on the courts therein named jurisdiction over all controversies arising between the railroad companies authorized to construct their roads through the Indian Territory and the Choctaw Nation and the other nations and tribes of Indians owning lands in the territory through which the railroads might be constructed. Other acts have been passed authorizing suits to be brought by or against these Indian Nations in the

Indian Territory to settle controversies between them and the United States and between themselves.[1]

The constitutional competency of congress to pass such acts has never been questioned, but no court has ever presumed to take jurisdiction of a cause against any of the five civilized Nations in the Indian Territory in the absence of an act of congress expressly conferring the jurisdiction in the particular case. The political departments of the United States government, by treaties, by acts of congress, and by executive action, have always recognized the Choctaw Nation "as a state, and as a distinct political society, separate from others, and capable of managing its own affairs and governing itself"; and the courts are bound by these acts of the political departments of the government. Cherokee Nation v. Georgia, 5 Pet. 1. The Cherokee Nation, which is identical in all respects, so far as relates to its independence and form of government, with the Choctaw Nation, has been variously described by the courts as "a domestic, dependent nation" (Cherokee Nation v. Georgia, supra); "as a state, in a certain sense, although not a foreign state or a state of the Union" (Holden v. Joy, 17 Wall. 211); "as a distinct community, with boundaries accurately described" (Worcester v. Georgia, 6 Pet. 515); "an alien, though dependent, power" (Elk v. Wilkins, 112 U. S. 103, 5 Sup. Ct. 41); "not a foreign, but a domestic, territory; a territory which originated under our constitution and laws" (Mackey v. Coxe, 18 How. 100). By the treaty between the United States and the Choctaw Nation of September 27, 1830 (7 Stat. 333), the United States granted to the Choctaw Nation, in fee simple, "to inure to them while they shall exist as a Nation and live on it," the country now occupied by them; and by the fourth article of this treaty it is provided that "the government and people of the United States are hereby obliged to secure to the said Choctaw Nation of red people the jurisdiction and government of all the persons and property that may be

---

[1] Among such acts are the following: "An act for the ascertainment of amount due the Choctaw Nation." 21 Stat. 504. Act of July 4, 1884 (23 Stat. 73), granting the right of way through the Indian Territory to the Southern Kansas Railway Company. An act granting right of way through Indian Territory to Kansas & Arkansas Valley Railway Company. 24 Stat. 73. An act granting the right of way to the Denison & Wichita Valley Railway Company through the Indian Territory. Id. 117. An act granting the right of way through the Indian Territory to the Kansas City, Ft. Scott & Gulf Railway Company. Id. 124. An act granting the right of way through Indian Territory to Ft. Worth & Denver City Railway Company. Id. 419. An act granting the right of way through Indian Territory to the Chicago, Kansas & Nebraska Railway Company. Id. 446. An act granting right of way through the Indian Territory to the Choctaw Coal & Railway Company. 25 Stat. 35. An act granting right of way to the Ft. Smith & El Paso Railway Company through the Indian Territory. Id. 162. An act granting the right of way to Kansas City & Pacific Railway Company through the Indian Territory. Id. 140. An act granting the right of way to Paris, Choctaw & Little Rock Railway Company through the Indian Territory. Id. 205. An act granting right of way to Ft. Smith, Paris & Dardanelle Railway Company through Indian Territory. Id. 745. An act to authorize the Kansas & Arkansas Valley Railway Company to construct an additional railroad through the Indian Territory. 26 Stat. 783.

within their limits west, so that no territory or state shall ever have a right to pass laws for the government of the Choctaw Nation of red people and their descendants; and that no part of the land granted them shall ever be embraced in any territory or state; but the United States shall forever secure said Choctaw Nation from and against all laws except such as from time to time may be enacted in their own national councils not inconsistent with the constitution, treaties and laws of the United States." The right of independent self-government guarantied to the Choctaw Nation by this treaty has been fully exercised, and the rights of the Nation in this regard have never been questioned by the United States. The Nation has long had a written constitution, and laws modeled after those of the states of the Union, and differing from them in no essential respect. Vide Mehlin v. Ice, 5 C. C. A. 403, 56 Fed. 12.

While the Nation has many of the attributes of the political unit which constitutes the civil and self-governing community called a "State" or a "Nation," it is not a sovereign state, but it is a domestic and dependent state, subject to the jurisdiction and authority of the United States. Being a domestic and dependent state, the United States may authorize suit to be brought against it. But, for obvious reasons, this power has been sparingly exercised. It has been the settled policy of the United States not to authorize such suits except in a few cases, where the subject-matter of the controversy was particularly specified, and was of such a nature that the public interests, as well as the interests of the Nation, seemed to require the exercise of the jurisdiction. It has been the policy of the United States to place and maintain the Choctaw Nation and the other civilized Indian Nations in the Indian Territory, so far as relates to suits against them, on the plane of independent states. A state, without its consent, cannot be sued by an individual. "It is a well-established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts or any other without its consent and permission; but it may, if it thinks proper, waive this privilege, and permit itself to be made a defendant in a suit by individuals or by another state." Beers v. Arkansas, 20 How. 527. The United States has waived its privilege in this regard, and allowed suits to be brought against it in a few specified cases. Some of the states of the Union have at times claimed no immunity from suits, but experience soon demonstrated this to be an unwise and extremely injurious policy, and most, if not all, of the states after a brief experience, abandoned it, and refused to submit themselves to the coercive process of judicial tribunals. When the supreme court of the United States in Chisholm v. Georgia, 2 Dall. 419, decided that under the constitution that court had original jurisdiction of a suit by a citizen of one state against another state, the eleventh amendment to the constitution was straightway adopted, taking away this jurisdiction. Since the adoption of this amendment, the contract of a state "is substantially without sanction, except that which arises out of the honor and good faith of the state itself; and these are not subject-

to coercion." In re Ayers, 123 U. S. 443, 505, 8 Sup. Ct. 164. One claiming to be creditor of a state is remitted to the justice of its legislature. It has been the settled policy of congress not to sanction suits generally against these Indian Nations, or subject them to suits upon contracts or other causes of action at the instance of private parties. In respect to their liability to be sued by individuals, except in the few cases we have mentioned, they have been placed by the United States, substantially, on the plane occupied by the states under the eleventh amendment to the constitution. The civilized Nations in the Indian Territory are probably better guarded against oppression from this source than the states themselves, for the states may consent to be sued, but the United States has never given its permission that these Indian Nations might be sued generally, even with their consent. As rich as the Choctaw Nation is said to be in lands and money, it would soon be impoverished if it was subject to the jurisdiction of the courts, and required to respond to all the demands which private parties chose to prefer against it. The intention of congress to confer such a jurisdiction upon any court would have to be expressed in plain and unambiguous terms. The judgment of the United States court in the Indian Territory is affirmed.