## UNITED STATES v. UNITED STATES FIDELITY & GUARANTY CO. et al.

### No. 1854.

Circuit Court of Appeals, Tenth Circuit.
Sept. 6, 1939.

Rehearing Denied Nov. 8, 1939.

William R. Sherwood, of Washington, D. C. (Charles E. Collett, Acting Asst. Atty. Gen., Cleon A. Summers, U. S. Atty., of Muskogee, Okl., Charles W. Leaphart, Sp. Asst. to Atty. Gen., and Thomas Harris, of Washington, D. C., on the brief), for the United States.

Bower Broaddus, of Muskogee, Okl. (Julian B. Fite, of Muskogee, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

The Choctaw and Chickasaw Nations, pursuant to authority conferred by the Act of June 28, 1898, 30 Stat. 495, executed two separate coal and asphalt leases covering certain tribal lands. The United States Fidelity and Guaranty Company became surety on the bond given by the lessee for the faithful performance of its obligations contained in the leases. Central Coal and Coke Company, a corporation organized under the laws of Missouri, acquired the leases by assignment, the surety on the bond consenting thereto. The leases provided for payment of advance royalties and deficit royalties. Central Coal and Coke Company was placed in equity receivership in the United States Court for Western Missouri; and an ancillary proceeding in receivership was filed in the United States Court for Eastern Oklahoma. The United States, acting through the Superintendent of the Five Civilized Tribes, filed in the ancillary proceeding a claim on behalf of the Choctaw and Chickasaw Nations for $4,800, representing unpaid and' delinquent royalties under the leases. By agreement of the United States Attorney for Eastern Oklahoma and the receiver of Central Coal and Coke Company such claim was transferred to the original proceeding in Western Missouri and subsequently treated as though originally filed there. Thereafter that court approved a petition for corporate reorganization of Central Coal and Coke Company under the provisions of section 77B of the National Bankruptcy Act, 11 U.S.C.A. § 207. The trustee in the reorganization proceeding filed an answer and a counterclaim. The counterclaim was for advance royalties paid on the leases in question and two other leases for which it was asserted credit should have been given against subsequent production, and for deficit royalties illegally exacted and paid. The special master to whom the matter was referred heard evidence and reported that the claim of the Government should be allowed in the sum of $2,000 and that the credits asserted by the trustee in the counterclaim should be allowed in the sum of $11,060.90. The court denied exceptions to the report and entered judgment that the United States in behalf of the Choctaw and Chickasaw Nations take nothing, and that the claim of Central Coal and Coke Company be fixed as against such Nations in the sum of $9,060.90 to be secured and collected in the manner provided by law. No appeal was taken from that judgment.

While the claim and counterclaim were pending in Western Missouri, and about three months prior to the time that court

rendered its judgment, the United States, in its own behalf and for the Choctaw and Chickasaw Nations, filed this suit in the Eastern District of Oklahoma against United States Fidelity and Guaranty Company as surety on the bond, to recover judgment for the identical royalties involved in such claim. Leave to do so having been obtained, the trustee of Central Coal and Coke Company, and Central Coal and Coke Corporation, which had taken over the assets of Central Coal and Coke Company pursuant to an order of court made in the reorganization proceeding, intervened and pleaded on its merits the same counterclaim which had been litigated in Western Missouri, and they also pleaded the judgment rendered in that court. By amended answer, United States Fidelity and Guaranty Company pleaded that the claim and counterclaim had been litigated in Western Missouri, resulting in a judgment in favor of Central Coal and Coke Company on such counterclaim; that Central Coal and Coke Company was insolvent; and that the surety company adopted the allegations contained in the petition in intervention and claimed the credits fully set forth therein. By answer to the petition in intervention and by reply to the amended answer, the United States pleaded that the judgment rendered in Western Missouri was void for the reason that the court was without jurisdiction to render judgment against the United States upon the counterclaim.

The trial court determined that the court in Western Missouri had jurisdiction of the parties and of the subject matter of the claim and counterclaim; that the judgment rendered there was valid and not subject to collateral attack; that it constituted a bar to the claim of plaintiff; that for such reason judgment should be entered for defendant; and that the interveners were entitled to judgment against the Indian tribes. Judgment was rendered in which it was provided that the United States take nothing; that upon the judgment of the court in Missouri the trustees of Central Coal and Coke Company recover of and from the Choctaw and Chickasaw Tribes the sum of $9,060.90 with interest at six per cent per annum from February 19, 1936, to be secured and collected in the manner provided by law; and that United States Fidelity and Guaranty Company recover its costs. 24 F. Supp. 961. The United States appealed.

The first attack on the judgment in this case is that it was founded on the judgment rendered in the Western District of Missouri; and that the judgment of that court was void for the reason that the court did not have jurisdiction of the subject matter, that is to say, of the claim and counterclaim. It may not be amiss to recall at the outset certain well established principles. The United States as guardian of Indian tribes or individual Indians may institute appropriate suits or proceedings for the enforcement of the rights or the protection of the property of its Indian wards. Heckman v. United States, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820; United States v. Noble, 237 U.S. 74, 35 S.Ct. 532, 59 L.Ed. 844; United States v. Board of Com'rs Osage County, 251 U.S. 128, 40 S.Ct. 100, 64 L.Ed. 184; La Motte v. United States, 254 U.S. 570, 41 S.Ct. 204, 65 L.Ed. 410; Cramer v. United States, 261 U.S. 219, 43 S.Ct. 342, 67 L.Ed. 622; United States v. Minnesota, 270 U.S. 181, 46 S.Ct. 298, 70 L.Ed. 539; Mars v. McDougal, 10 Cir., 40 F.2d 247; Tiger v. Twin State Oil Co., 10 Cir., 48 F.2d 509. The right to maintain suits or proceedings of that character is the necessary complement to its obligations of guardianship. And in such a suit or proceeding it is a real party even though it does not have any pecuniary interest in the final recovery. Heckman v. United States, supra; United States v. New Orleans Pac. R. Co., 248 U.S. 507, 39 S.Ct. 175, 63 L.Ed. 388; La Motte v. United States, supra; Cramer v. United States, supra; Tiger v. Twin State Oil Co., supra. In the absence of a controlling statute, the Attorney General of the United States is authorized and empowered to institute, or cause to be instituted, and thereafter to prosecute all suits or proceedings deemed necessary to safeguard or enforce the rights of the United States. United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93; United States v. San Jacinto Tin Co., 125 U.S. 273, 8 S.Ct. 850, 31 L.Ed. 747; Causey v. United States, 240 U.S. 399, 36 S.Ct. 365, 60 L.Ed. 711; Mars v. McDougal, supra; Pueblo of Picuris in State of New Mexico v. Abeyta, 10 Cir., 50 F.2d 12.

It is provided by section 24(1) of the Judicial Code, 28 U.S.C.A. § 41(1), that the District Courts of the United States shall have jurisdiction of all suits of a civil nature at common law or in equity brought by the United States. An action in personam on a contract is a transitory action, and ordinarily it may be brought where the party

against whom relief is sought may be found. The claim of the Choctaw and Chickasaw Nations for delinquent royalties was a transitory action growing out of leases covering lands in Oklahoma, and the United States had power to file it in the ancillary proceeding. It was transferred to the principal receivership proceeding in Missouri, but final action was taken on it in the corporate reorganization proceeding under section 77B of the Bankruptcy Act. That section provides that after approval of the petition for reorganization the court shall have exclusive jurisdiction of the debtor and its property wherever located for the purposes of the section, and shall have and may exercise all the powers not inconsistent with the section which a Federal court would have had it appointed a receiver in equity of the property of the debtor by reason of its inability to pay its debts as they mature. It is clear that unless deprived thereof by some special statute, the court in Western Missouri had jurisdiction to consider the claim and to render a binding judgment respecting it. Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island R. Co., 294. U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110; In re Greyling Realty Corporation, 2 Cir., 74 F.2d 734.

The Atoka Agreement negotiated between the United States and the Choctaw and Chickasaw Nations in April, 1897, and ratified by the Act of June 28, 1898, 30 Stat. 495, 505, previously adverted to, is relied upon as vesting exclusive jurisdiction in the United States Court for Eastern Oklahoma of a case or proceeding involving such a claim. That agreement contains a provision that the United States Courts then existing or thereafter created in the Indian Territory should have exclusive jurisdiction of all controversies growing out of the titles, ownership, occupation, possession, or use of real estate, coal, and asphalt in the territory occupied by the tribes. In determining the intended meaning of the provision resort may be had to the background against which it was written. A United States Court for the Indian Territory was created in 1889, with exclusive jurisdiction over all offenses against the laws of the United States committed within the Indian Territory, as therein defined, not punishable by death or by imprisonment at hard labor; with jurisdiction in civil cases between citizens of the United States who were residents of the Indian Territory, or between citizens of the United States, or of any state or territory therein, and any citizen of or person residing or found in the Indian Territory, when the amount in controversy was one hundred dollars or more; but without jurisdiction over controversies between persons of Indian blood. The court was vested with jurisdiction over controversies arising out of coal mining leases or contracts executed by any of the tribes where the amount involved exceeded the sum of one hundred dollars, 25 Stat. 783. The jurisdiction of the court was enlarged in 1890, 26 Stat. 81. The territory was divided into three separate districts and the jurisdiction of the courts somewhat enlarged in 1895, 28 Stat. 693. The appointment of an additional judge was authorized in 1897, 30 Stat. 62, 84. For many years prior to the execution of the Atoka Agreement, the Choctaw and Chickasaw Nations each had a system of tribal government, including tribal courts vested with jurisdiction to decide controversies arising among members of the tribe. In 1893, Congress authorized the appointment of the so-called Dawes Commission, 27 Stat. 612, 645; and the commission stated in a report made in 1895 that all branches of the governments in the territory were wholly corrupt, irresponsible, and unworthy to be longer entrusted with the care and control of the money and other property of the Indian citizens, much less their lives, and recommended that such governments be abolished. Construed in the light of this factual background, the provision in question indicates clearly and convincingly that it has reference to local actions in respect of titles, ownership, and occupation of lands, coal, and asphalt, not to transitory actions which are personal in character; and that the primary purpose was to divest the tribal courts of jurisdiction in such actions. Neither the language, the history leading up to the negotiation of the agreement, nor the act of ratification, is persuasive that the provision was intended as a grant of jurisdiction to the United States Courts in the Indian Territory or their successor in jurisdiction[1] of transitory actions so as to deprive other United States courts of the jurisdiction which they otherwise would possess.

Section 18 of the Act of April 26, 1906, 34 Stat. 137, 144, is also relied upon as

---

[1] The United States Court for Eastern Oklahoma succeeded to the jurisdiction of the United States Courts in the Indian Territory. See United States v. Rea-Read Mill & Elevator Co., C.C., 171 F. 501, 512.

vesting exclusive jurisdiction in the United States Court for Eastern Oklahoma of a cause or controversy arising out of the leases in question. That statute authorizes the Secretary of the Interior to bring suit in the name of the United States for the use of the Five Civilized Tribes to collect moneys or to recover lands claimed by them; it provides that when such suit is filed to recover moneys due and owing the tribe, the defendant shall have the right to set up and have adjudicated any claim it may have against such tribe; and it further provides that the United States Courts in Indian Territory are given jurisdiction to try and determine such suits. It is to be observed that the statute fails to provide in express language that such courts shall have exclusive jurisdiction. The mere grant of jurisdiction to one court, without more, does not imply that the jurisdiction is to be exclusive. United States v. Bank of New York & Trust Co., 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331. It is to be presumed that had Congress intended to vest exclusive jurisdiction of such controversies in the United States Courts in the Indian Territory it would have used apt words to indicate such purpose. In the absence of such an indication of purpose, the act cannot be construed to deprive the court in Western Missouri of the jurisdiction it otherwise had. It follows that the judgment of that court was not subject to collateral attack for want of jurisdiction of the subject matter.

■ It is contended that even though the Act of 1906, supra, did not deprive the court in Western Missouri of jurisdiction of the subject matter of the proceeding, it conferred no jurisdiction on that court to render an affirmative judgment. The argument is that due to their immunity from civil suit, recoupment could not be had against the United States or the Indian Nations unless expressly authorized and that no such authority had been granted. A direct suit cannot be brought against a sovereign in the absence of its consent. But where the United States voluntarily comes into court as a private suitor, it waives its immunity and becomes a litigant for all purposes except in respect to affirmative relief against it beyond the matters in controversy, and costs. An amount due the opposite party arising out of the same transaction may be pleaded by way of recoupment and credit in an action brought by the United States. United States v. MacDaniel, 7 Pet. 1, 8 L. Ed. 587; United States v. Ringgold, 8 Pet. 150, 8 L.Ed. 899; Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421.

■ The Choctaw and Chickasaw Nations are sovereigns immune to civil suit except when expressly authorized. Turner v. United States, 248 U.S. 354, 39 S.Ct. 109, 63 L.Ed. 291; Thebo v. Choctaw Tribe of Indians, 8 Cir., 66 F. 372; Adams v. Murphy, 8 Cir., 165 F. 304. But there is no need to determine whether the court in Western Missouri had jurisdiction to render an affirmative judgment against the Indian Nations for any amount on the counterclaim. The court had jurisdiction to judicially determine the credits on the counterclaim to which Central Coal and Coke Company was entitled in connection with the transaction out of which the claim grew, and to apply enough thereof to offset the claim. De Groot v. United States, 5 Wall. 419, 431, 18 L.Ed. 700. The judgment of the court in Missouri merely adjudicated the respective amounts due on the claim and the counterclaim, applied sufficient of that due on the counterclaim to offset in full the claim, and fixed the balance due on the counterclaim as against the Indian Nations at $9,060.90, to be secured and collected in the manner provided by law. The effect of the judgment was that the United States take nothing and that Central Coal and Coke Company go hence without day. Reeside v. Walker, 11 How. 272, 13 L.Ed. 693; Lee v. Kaufman, 3 Hughes 36, 15 Fed.Cas. 162, No. 8191. Such a judgment rendered in a cause or proceeding which the sovereign voluntarily initiated is not open to the objection that it violates the doctrine of immunity. And since the court in Western Missouri had jurisdiction to render such a judgment upon casting up the charges and credits, the court in Oklahoma was bound by it in this later action involving the same controversy.

■ The further contention advanced is that the court below should have restricted the intervention to purposes of defense; that it was error to allow the interveners to come into the case for the purpose of litigating a counterclaim for affirmative relief. The intervention was allowed, and the judgment was rendered before the New Rules of Federal Procedure, 28 U.S.C.A. following section 723c, became effective. Equity Rule 37, 28 U.S.C.A. following section 723, therefore has application. That rule provides that anyone claiming an interest in the litigation may at any time be permitted to assert his right by intervention but the intervention shall be in subordina-

810

tion to, and in recognition of, the propriety of the main action. The rule is no warrant for an intervener to come into a suit for the purpose of having adjudicated some controversy solely between it and the plaintiff which is entirely independent of the controversy between plaintiff and defendant. In other words, an intervener cannot enter a case for the avowed purpose of enlarging the scope of the litigation to the extent of injecting into it wholly new and independent issues. Chandler & Price Co. v. Brandtjen & Kluge, Inc., 296 U.S. 53, 56 S.Ct. 6, 80 L.Ed. 39. But no such situation is presented here. The petition in intervention tendered only issues growing out of the original transaction on which the suit was founded. No new and independent controversy not arising out of the transaction in suit was presented. Furthermore, no objection was made to the filing of the petition in intervention, and therefore the interveners should be treated for all intents and purposes as though they had been made parties defendant and had set up their matters in defense by way of counterclaim. French v. Gapen, 105 U.S. 509, 26 L.Ed. 951. It certainly cannot be contended that the matters pleaded in the intervention would be vulnerable to objection on the ground of injecting foreign issues into the cause if the interveners had been joined as parties defendant and had pleaded them by answer and counterclaim.

The remaining contentions which merit discussion are that the court erred in awarding interest against the Indian tribes and in awarding costs against the United States. Repeating, the Indian tribes, like the United States, are sovereigns immune from civil suit except when expressly authorized. Turner v. United States, supra; Thebo v. Choctaw Tribe of Indians, supra; Adams v. Murphy, supra. It is a well settled rule that the United States is not liable for interest unless the liability is created by statute or assumed by authorized contract. United States ex rel. McLeod v. Sherman, 98 U.S. 565, 25 L.Ed. 235; Angarica v. Bayard, 127 U.S. 251, 8 S.Ct. 1156, 32 L.Ed. 159; United States v. Worley, 281 U.S. 339, 50 S.Ct. 291, 74 L.Ed. 887; Reed v. Howbert, 10 Cir., 77 F.2d 227. That rule applies to the Indian tribes. The award of interest on the amount by which the counterclaim exceeded the claim does not find its genesis in any statute or contract executed with authority of law. It is well settled that the United States is not liable for costs except when authorized by statute.

Stanley v. Schwalby, 162 U.S. 255, 16 S. Ct. 754, 40 L.Ed. 960; United States v. Chemical Foundation, 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131; United States v. Worley, supra.

The judgment is modified by striking out the respective provisions awarding interest and costs, and as modified it is affirmed.