Tom RUNYON and Laura Runyon, as
parents and next friend of B.R.,
a minor child, Appellants,

v.

ASSOCIATION OF VILLAGE COUNCIL
PRESIDENTS and Mary Kilbuck,
Appellees.

Evan Nick and Stella Wassilie, as parents
and next friend of J.N., a minor
child, Appellants,

v.

Association of Village Council
Presidents, Appellee.

Nos. S–10772, S–10838.

Supreme Court of Alaska.

Jan. 30, 2004.

438

David Henderson, Law Offices of David Henderson, Bethel, and Charles E. Cole, Law Offices of Charles E. Cole, Fairbanks, for Appellants.

Patrick J. McKay, Law Offices of Patrick J. McKay, Anchorage, for Appellees.

Robert K. Stewart, Jr., Davis Wright Tremaine LLP, Anchorage, and Geoffrey D. Strommer, Hobbs, Straus, Dean & Walker, LLP, Portland, Oregon, for Amicus Curiae Bristol Bay Area Health Corporation.

Heather Kendall Miller, Native American Rights Fund, Anchorage, and Lloyd Miller, Sonosky, Chambers, Sachse, Miller & Munson, Anchorage, for Amicus Curiae Alaska Inter–Tribal Council.

William S. Cummings, Ashburn & Mason, Anchorage, for Amicus Curiae Alaska Academy of Trial Lawyers.

Donald Craig Mitchell, Anchorage, for Amicus Curiae Legislative Council of the Alaska Legislature.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I.  INTRODUCTION

The Association of Village Council Presidents ("AVCP" or "the Association") is a nonprofit Alaska corporation consisting of fifty-six Alaska Native villages in the Bethel area, each a federally recognized tribe. It provides a variety of social services, including a Head Start program. The parents of two students in the program brought tort actions against AVCP after their children suffered injuries in separate incidents allegedly stemming from the inadequate training and supervision of Head Start teachers. The superior court dismissed the cases, concluding that AVCP is protected by its member tribes' sovereign immunity. In this consolidated appeal, the parents argue that AVCP is not entitled to assert the sovereign rights of its member tribes. Because we conclude that the villages are not the real parties in interest in these actions and that AVCP is not protected by their sovereign immunity, we reverse the superior court.

## II.  FACTS AND PROCEEDINGS

### A.  Factual History

This case originated as a pair of suits alleging negligence in the management of the Head Start program run by AVCP. The Association is a nonprofit corporation serving the fifty-six Native villages of the Yukon–Kuskokwim Delta. It was incorporated in 1969 as a "closed Corporation representing the Eskimo, Indian, and Aleut people of the area." Its board of directors is comprised of one representative from each member village. Each representative has a single, equal vote in the Association. According to an affidavit executed by AVCP associate counsel Scott Sidell:

> AVCP operates a wide range of traditionally governmental programs designed to benefit the member tribes, almost exclusively with state and federal funding. These programs include a variety of governmental social service programs including General Assistance and Temporary Assistance for Needy Families (TANF), juvenile programs, vocational rehabilitation, elder programs, and tribal development and technical assistance. AVCP also coordinates regional village law enforcement through the Village Public Safety Officer Program. AVCP contracts many other programs and services with the United States Government under the Indian Self–Determination and Educational Assistance Act, 25 U.S.C. 450 et seq. All

AVCP services are designed [to] promote the welfare of our member tribal governments and preserve and protect the Yup'ik culture of all tribal members.

Moreover, "AVCP contracts with the United States Department of Health and Human Services, under the American Indian Native Alaskan Program, for Head Start program funds."

The facts of the tort suits are not at issue here, so there is no need to go into great detail. Minors B.R. and J.N. were Head Start students. B.R., the child of Tom and Laura Runyon, was allegedly molested at school by another student. J.N., the child of Evan Nick and Stella Wassilie, had her middle finger "cut off in [a] door" at the building used by Head Start. We refer to the parents collectively as "the Runyons." In each case, the plaintiffs alleged that AVCP was negligent in failing to train Head Start teachers properly and in allowing the incidents to occur.

### B. Procedural History

Both minors' parents sued AVCP; B.R.'s parents also sued the teacher responsible for their child at the time of the incidents. Their complaints alleged that AVCP's actions "amount[ed] to willful and wanton misconduct, intentional infliction of harm and emotional distress, gross negligence, and extreme carelessness evidencing a reckless indifference toward and disregard for the value of human life and the safety of the public," and asked for punitive damages.

AVCP filed motions to dismiss in both actions, claiming that it was protected by the sovereign immunity of the fifty-six sovereign tribes that incorporated it. The superior court granted the motions to dismiss in both cases on the basis of sovereign immunity. Both sets of parents appealed to this court and the cases were consolidated on appeal.

### III. STANDARD OF REVIEW

■ The only issue in this appeal, whether AVCP is protected by tribal sovereign immunity, is a question of law. We review questions of law de novo, adopting the rule that is most persuasive in light of precedent, reason, and policy.[1]

### IV. DISCUSSION

■ The essential legal question presented by this case is whether AVCP may be sued by private parties, or whether the sovereign immunity of its member tribes extends to bar such suits. Indian tribes are "distinct, independent political communities, retaining their original natural rights."[2] In other words, they are sovereigns. Although Alaska no longer contains Indian country, its Native villages "retain those fundamental attributes of sovereignty ... which have not been divested by Congress or by necessary implication of the tribe's dependent status."[3] "[T]ribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers."[4] Each of AVCP's member tribes is therefore protected by tribal sovereign immunity.

■ A subdivision of tribal government or a corporation attached to a tribe may be "so closely allied with and dependent upon the tribe"[5] that it is effectively an "arm of the tribe."[6] It is then "actually a part of the tribe *per se*, and, thus, clothed with tribal

---

1. *Bennett v. Bennett*, 6 P.3d 724, 726 (Alaska 2000).

2. *Worcester v. Georgia*, 31 U.S. 515, 559, 6 Pet. 515, 8 L.Ed. 483 (1832); *see also United States v. Kagama*, 118 U.S. 375, 381–82, 6 S.Ct. 1109, 30 L.Ed. 228 (1886).

3. *John v. Baker*, 982 P.2d 738, 751 (Alaska 1999) (citation omitted). We decline the invitations of the Runyons and amicus Legislative Council to revisit *John v. Baker*. "Stare decisis compels us to give precedential value to our prior holdings." *Joseph v. State*, 26 P.3d 459, 468 (Alaska 2001).

4. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978); *see also United States v. United States Fid. & Guar. Co.*, 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940); *Atkinson v. Haldane*, 569 P.2d 151, 157–63 (Alaska 1977).

5. *Ransom v. St. Regis Mohawk Educ. & Cmty. Fund, Inc.*, 86 N.Y.2d 553, 635 N.Y.S.2d 116, 658 N.E.2d 989, 993 (1995).

6. *Id.* at 992 (quotation marks omitted).

immunity." [7] Tribal status similarly may extend to an institution that is the arm of multiple tribes, such as a joint agency formed by several tribal governments.[8] Whether the entity is formed by one tribe or several, it takes on tribal sovereign immunity only if the tribe or tribes, the sources of sovereign authority and privilege, are the real parties in interest.[9]

■■■ A corporation, agency, or other organization is an arm of a tribe for sovereign immunity purposes if its connection to the tribe—or tribes—is so close that allowing suit against the entity will damage the tribal interests that immunity protects. "Indian tribes enjoy immunity because they are sovereigns predating the Constitution, and because immunity is thought necessary to promote the federal policies of tribal self determination, economic development, and cultural autonomy." [10] Protecting the tribal

treasury is a crucial aspect of both of these grounds for immunity. "[P]reventing judgments from depleting state treasuries" is a key reason for the states' sovereign immunity under the Eleventh Amendment to the federal constitution.[11] Tribal sovereign immunity, drawing on the same antecedents,[12] is also motivated in significant part by the need to ensure that tribal assets are used as the tribe wishes, without threat from litigation.[13] Furthermore, protecting tribal assets has long been held crucial to the advancement of the federal policies advanced by immunity.[14]

The entity's financial relationship with the tribe is therefore of paramount importance— if a judgment against it will not reach the tribe's assets or if it lacks the "power to bind or obligate the funds of the [tribe]," it is unlikely that the tribe is the real party in interest.[15] If, on the other hand, the tribe

7. *Dixon v. Picopa Contr. Co.*, 160 Ariz. 251, 772 P.2d 1104, 1108 (1989) (citing *White Mountain Apache Indian Tribe v. Shelley*, 107 Ariz. 4, 480 P.2d 654, 657 (1971)); *see also Altheimer & Gray v. Sioux Mfg. Corp.*, 983 F.2d 803, 812 (7th Cir.1993); *Weeks Const., Inc. v. Oglala Sioux Housing Auth.*, 797 F.2d 668, 670–71 (8th Cir. 1986).

8. *See Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185 (9th Cir.1998) (holding that multitribe agency is "Indian tribe" within meaning of 42 U.S.C. § 2000e(b)); *Dille v. Council of Energy Res. Tribes*, 801 F.2d 373 (10th Cir.1986) (same).

9. *Ransom*, 635 N.Y.S.2d 116, 658 N.E.2d at 993.

10. *Am. Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe*, 780 F.2d 1374, 1378 (8th Cir.1985).

11. *Harter v. Vernon*, 101 F.3d 334, 337 (4th Cir. 1996) (citing *Hess v. Port Authority Trans–Hudson Corp.*, 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994)).

12. Although the Eleventh Amendment immunity is based on the constitutional text while tribal sovereign immunity is a judicial doctrine, they share a background of traditional ideas about the power and privileges of the sovereign. "[Tribes] have been placed by the United States, substantially, on the plane occupied by the states under the eleventh amendment to the constitution." *Thebo v. Choctaw Tribe of Indians*, 66 F. 372, 376 (8th Cir.1895). Tribal immunity is a form of "the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara*

*Pueblo*, 436 U.S. at 58, 98 S.Ct. 1670. Similarly, cases interpreting the Eleventh Amendment to protect states from suit by private citizens are grounded in traditional understandings of sovereignty. *See, e.g., In re State of New York*, 256 U.S. 490, 497, 41 S.Ct. 588, 65 L.Ed. 1057 (1921) ("That a state may not be sued without its consent is a fundamental rule of jurisprudence...."); *Hans v. Louisiana*, 134 U.S. 1, 12– 19, 10 S.Ct. 504, 33 L.Ed. 842 (1890) (basing state sovereign immunity in an interpretation of the Eleventh Amendment grounded on "the old law"); *see also* William A. Fletcher, *A Historical Interpretation of the Eleventh Amendment: A Narrow Construction of An Affirmative Grant of Jurisdiction Rather Than A Prohibition Against Jurisdiction*, 35 STAN. L.REV. 1033, 1071 (1983) ("[The Eleventh Amendment] ... affirmed ... the traditional principle of sovereign immunity....").

13. *See Native Village of Stevens v. Alaska Mgmt. & Planning*, 757 P.2d 32, 41 n. 24 (Alaska 1988); *Atkinson*, 569 P.2d at 160.

14. *See Thebo*, 66 F. at 376 (tribe "would soon be impoverished if it was subject to the jurisdiction of the courts"); *Adams v. Murphy*, 165 F. 304, 308 (8th Cir.1908) ("Upon considerations of public policy ... Indian tribes are exempt from civil suit.... If any other course were adopted, the tribes would soon be overwhelmed with civil litigation and judgments.").

15. *See Ransom*, 635 N.Y.S.2d 116, 658 N.E.2d at 992 (quoting *Altheimer & Gray*, 983 F.2d at 809); *see also White Mountain Apache Tribe v. Smith Plumbing Co., Inc.*, 856 F.2d 1301, 1305 (9th Cir.1988) (holding that sovereign immunity does

would be legally responsible for the entity's obligations, it may be an arm of the tribe. In such a case other factors, relating to how much control the tribe exerts or whether the entity's work is commercial or governmental, may assist in the determination.[16]

■ This case does not require us to refine these other factors because the most important factor, the financial relationship between AVCP and the villages, gives a clear answer. Under Alaska law, the fifty-six villages of AVCP, the members of a nonprofit corporation, "are not ... liable ... on [the corporation's] obligations."[17] Any judgment against AVCP will be paid out of the Association's coffers alone. Even if they fall short, the villages' assets will be safe from execution. This legal insulation makes clear that AVCP is not an arm of the villages. The villages therefore are not the real parties in interest to this lawsuit. And AVCP is not entitled to the protection of the villages' tribal sovereign immunity.[18]

We note that we foresaw this arrangement over twenty-five years ago in our decision in *Atkinson v. Haldane*.[19] There we suggested in dicta that a tribe might, for commercial purposes, wish to form a corporation exposed to suit in order to cultivate trust with business partners.[20] Although that discussion considered tribal corporations formed under the Indian Reorganization Act,[21] its insight is relevant here. The tribes' use of the corporate form protects their assets from being called upon to answer the corporation's debt. But this protection means that they are not the real party in interest. Though this case does not call upon us to decide what financial structure *would* endow an association like AVCP with the tribes' immunity, any ar-

rangement forgoing a liability shield and exposing the tribal treasury would go a long way toward making the tribes the real parties in interest. The villages of the Yukon–Kuskokwim Delta have chosen to protect themselves from liability. By severing their treasuries from the corporation, they have also cut off their sovereign immunity before it reaches AVCP.

## V. CONCLUSION

Because the Association of Village Council Presidents is not protected by tribal sovereign immunity these two lawsuits should have been allowed to continue. We therefore REVERSE the superior court's dismissal of these two cases and REMAND them to that court for proceedings consistent with this opinion.

---

not bar action against tribe's surety because judgment against surety will not run against tribe); *Dixon*, 772 P.2d at 1109–10 (holding that liability insurance "insulat[ing] the [tribe] from [the entity's] debts" is "relevant to the question of whether an Indian commercial entity" is an arm of a tribe).

**16.** *See Gavle v. Little Six, Inc.* 555 N.W.2d 284, 294 (Minn.1996); *Ransom*, 635 N.Y.S.2d 116, 658 N.E.2d at 992 (citing Vetter, *Doing Business with Indians and the Three "S"es: Secretarial Approval, Sovereign Immunity and Subject Matter Jurisdiction*, 36 ARIZ. L.REV 169, 176 (1994)); *Dixon*, 772 P.2d at 1110–11.

**17.** AS 10.20.051(b).

**18.** Because we hold that AVCP is not immune, we do not need to address the Runyons' arguments that the organization waived immunity either by purchasing liability insurance or through the wording of its corporate charter, or AVCP's arguments concerning whether its agents and employees may be sued.

**19.** 569 P.2d 151, 170–75 (Alaska 1977).

