[No. 53950-7-I.   Division One.   May 23, 2005.]

CHRISTOPHER WRIGHT, *Appellant*, v. COLVILLE TRIBAL
ENTERPRISE CORPORATION ET AL., *Respondents*.

*Breean L. Beggs* (of *Center for Justice*), for appellant.

*Michael A. Griffin, M. Katheryn Bradley,* and *Wayne W. Hansen* (of *Jackson Lewis, L.L.P.*) and *Bruce E. Didesch* (of *Didesch & Associates*), for respondents.

*James R. Bellis* on behalf of Confederated Tribes of the Colville Reservation, amicus curiae.

¶1 APPELWICK, J. — Christopher Wright worked as a pipelayer and heavy equipment operator in Oak Harbor, Washington, for Colville Tribal Services Corporation (CTSC). He claims that he was repeatedly harassed and intimidated by his Native American co-workers and that he quit after his complaints to management resulted in no change. In state court, Wright sued his supervisor, CTSC, and CTSC's parent corporation for racial discrimination and harassment, negligent supervision, and negligent infliction of emotional distress. Respondents moved to dismiss for lack of subject matter jurisdiction. They alleged that Wright had entered into a consensual relationship with the Colville Tribe and that his claims would have a direct effect on the political integrity and the economic security of the Tribe. Respondents also claimed tribal sovereign immunity. The trial court granted the motion to dismiss. Because the alleged conduct occurred off the reservation, we find that the state court did have subject matter jurisdiction. We also find that, because Colville Tribal Enterprise Corporation (CTEC) and CTSC are organized primarily for commercial purposes and their actions do not bind the Tribe, they do not enjoy tribal sovereign immunity. We reverse and remand.

## FACTS

¶2 Christopher Wright was hired by CTSC in July 2002 as a pipelayer and equipment operator. CTSC was constructing a waterline for the United States Navy's residential housing development in Oak Harbor, Washington. Wright's work for CTSC was confined to this location.

¶3 CTSC is a wholly owned subsidiary of CTEC. Both CTEC and CTSC were created by the Colville Business Council (the Council) under the Colville Tribal Governmental Corporation Act. The Council is a group of 14 Colville tribe members and is the governing body of the Confederated Tribes of the Colville Reservation (the Tribe). The Council members are the shareholders of CTEC, acting in

their representative capacity on behalf of the Tribe. CTEC's primary responsibility is to oversee the 14 tribal business enterprises, including CTSC. Three of the 14 enterprises are casinos, and 80 percent of the casino net income goes directly to the Tribe. But only 25 percent of CTEC's noncasino net income is distributed directly to the Tribe; the remaining funds cover CTEC's capital expenditures and business development. The Tribe is not liable for CTEC's debts and obligations.

¶4 Wright alleges that he was repeatedly and progressively harassed by his Native American co-workers because of his race. He claims that he was called a "white bitch" and that some of his Native American co-workers drove his car without his permission. Wright states that he complained verbally to Respondent Don Braman, his supervisor, as well as in writing to management. Wright claims that at an October 2002 meeting with the co-workers in question and management, he was assured that the behavior would not be tolerated and that individuals who used racial slurs would be fired. However, Wright asserts that the harassment continued after the meeting, with Braman's full knowledge. Wright claims that he was finally forced to resign in February 2003 because he could not bear the harassment and intimidation any longer and realized his employer was not going to correct it.

¶5 Wright sued CTEC, CTSC, and Braman in Island County Superior Court in November 2003. Wright alleged race discrimination, racial harassment, and hostile work environment under chapter 49.60 RCW. He also alleged negligent supervision and negligent infliction of emotional distress. Respondents moved to dismiss the action under CR 12(b)(1), arguing that the trial court lacked subject matter jurisdiction and that the Respondents were immune from suit due to tribal sovereign immunity. The trial court found that it did not have subject matter jurisdiction and granted the Respondents' motion. The trial court also noted that the argument for sovereign immunity was "very compelling." Wright appeals.

*ANALYSIS*

I. Assignments of Error

¶6 Respondents note that Wright has failed to present specific assignments of error, in violation of RAP 10.3(a)(3). They also note that Wright did not state the specific trial court actions to which he was assigning error. In addition, Respondents claim that Wright's failure to assign error or provide briefing regarding three particular issues the trial court ruled on precludes this court from considering these issues on appeal. Specifically, those trial court actions were (1) the dismissal of claims against Braman, (2) rejection of Wright's argument that the corporate defendants waived sovereign immunity, and (3) rejection of Wright's argument that he was entitled to conduct discovery relating to jurisdiction.

¶7 Although Respondents do not directly claim that Wright's failure to present specific assignments of error prevents us from reaching the merits of the case, we shall nonetheless address the issue, in the interest of clarity. RAP 10.3(a)(3) provides that the appellant's brief should contain "[a] separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error." Wright's assignment of error consists of essentially one sentence: "The Island County Superior Court of Washington erred as a matter of law when it granted Respondent's [CR] 12(b)(6)[1] motion to dismiss on behalf of all respondents." Wright did not separately list out each error that he claims the trial court made, nor did he include issues pertaining to his assignment of error. However, noncompliance with the Rules of Appellate Procedure does not necessarily doom a petitioner:

> [A]n appellate court may exercise its discretion to consider cases and issues on their merits. This is true despite one or more technical flaws in an appellant's compliance with the

---

[1] It was actually a CR 12(b)(1) motion.

Rules of Appellate Procedure. This discretion, moreover, should normally be exercised unless there are compelling reasons not to do so. In a case where the nature of the appeal is clear and the relevant issues are argued in the body of the brief and citations are supplied so that the Court is not greatly inconvenienced and the respondent is not prejudiced, there is no compelling reason for the appellate court not to exercise its discretion to consider the merits of the case or issue.

*State v. Olson,* 126 Wn.2d 315, 323, 893 P.2d 629 (1995). Here, although Wright's assignment of error is extremely general, the relevant issues are clear from the body of his brief. Furthermore, Respondents have not been prejudiced by Wright's general assignment of error; Respondents were able to respond to every issue raised in Wright's brief. Thus, we will address Wright's appeal on the merits.

¶8 Respondents are correct that Wright has not addressed on appeal his claim that the corporate defendants waived immunity and his claim that he was entitled to conduct discovery. These issues are not briefed, and as a result, we do not consider them. *State v. Dennison,* 115 Wn.2d 609, 629, 801 P.2d 193 (1990).

¶9 However, we will consider the issue of the claims against Braman, because the issues that Wright has discussed in his brief all pertain to the dismissal of the claims against Braman. The subject matter jurisdiction issue pertains to Braman, and Wright does specifically argue that Braman does not enjoy tribal sovereign immunity. Further, lack of subject matter jurisdiction and tribal sovereign immunity are both defenses that Respondents argued applied to Braman in the CR 12(b)(1) motion. As noted, a court may exercise its discretion to consider a case on its merits if the issues have been set forth in the brief and the other parties have not been prejudiced. Respondents have had adequate opportunity to address the issues. Thus, we will consider the dismissal of the claims against Braman despite Wright's failure to specifically assign error to the issue.

## II. Subject Matter Jurisdiction

¶10 Wright claims that the trial court erred in dismissing the case for lack of subject matter jurisdiction. Wright asserts that the powers of an Indian tribe do not generally extend to nonmembers and that this case does not fall within either of the two recognized exceptions to this general rule discussed below. Respondents counter that both of the exceptions to this general rule apply. We find that the exceptions are inapplicable because the activity at issue occurred entirely off the Colville reservation and that the trial court accordingly erred in dismissing due to lack of subject matter jurisdiction.

■ ¶11 Under CR 82.5(a), a superior court must dismiss an action under CR 12(b)(1) if exclusive jurisdiction rests with a tribal court:

> Where an action is brought in the superior court of any county of this state, and where, under the Laws of the United States, exclusive jurisdiction over the matter in controversy has been granted or reserved to an Indian tribal court of a federally recognized Indian tribe, the superior court shall, upon motion of a party or upon its own motion, dismiss such action pursuant to CR 12(b)(1), unless transfer is required under federal law.

CR 12(b)(1) provides for dismissal of an action due to lack of subject matter jurisdiction. A trial court's decision that it lacked subject matter jurisdiction is a question of law that we review de novo. *Crosby v. Spokane County*, 137 Wn.2d 296, 301, 971 P.2d 32 (1999).

■ ¶12 Generally, "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Montana v. United States*, 450 U.S. 544, 565, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981). Respondents, however, assert that under *Montana*, the tribal courts do have jurisdiction over Wright's claim. In *Montana*, the Court established two exceptions to the general rule that tribes do not have subject matter jurisdiction over non-Indians:

> Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reserva-

tions, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Montana*, 450 U.S. at 565-66 (citations omitted). Respondents assert both that Wright entered into a consensual relationship with the Tribe and that state court jurisdiction would affect the Tribe's political integrity.

¶13 But *Montana* is inapplicable. Read in context, the *Montana* exceptions apply only when the activity in question occurred on the reservation or on non-Indian fee land. "Non-Indian fee land" refers to land still within the reservation boundaries but alienated in fee simple to non-Indian owners. *Montana*, 450 U.S. at 548. In *Montana*, the Crow tribe sought to prohibit hunting and fishing by nonmembers on non-Indian fee land.[2] *Montana*, 450 U.S. at 547. The Court found that neither of the exceptions applied to give the Crow tribe regulatory jurisdiction. *Montana*, 450 U.S. at 566. The Court later described its *Montana* holding as "a general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions." *Strate v. A-1 Contractors*, 520 U.S. 438, 446, 117 S. Ct. 1404, 137 L. Ed. 2d 661 (1997).[3]

---

[2] Although *Montana* involved tribal legislative jurisdiction, the Supreme Court later held that tribal adjudicative jurisdiction does not exceed legislative authority. *Strate v. A-1 Contractors*, 520 U.S. 438, 453, 117 S. Ct. 1404, 137 L. Ed. 2d 661 (1997).

[3] *Nevada v. Hicks*, 533 U.S. 353, 121 S. Ct. 2304, 150 L. Ed. 2d 398 (2001), does not change this interpretation. The *Hicks* court stated that the ownership status of the land is only one factor to consider in applying the *Montana* test. *Hicks*, 533 U.S. at 360. However, this statement was made in response to one of the parties' argument that because the land in question was tribe-owned land within the reservation (as opposed to non-Indian fee land), the tribe could necessarily

Thus, both the plain wording of *Montana* and later Supreme Court cases support this limitation.

¶14 Furthermore, other state and federal cases support this reading of *Montana*. In *Hornell Brewing Co. v. Rosebud Sioux Tribal Court*, 133 F.3d 1087, 1089 (8th Cir. 1998), the administrator of Crazy Horse's estate brought suit against a liquor manufacturer in tribal court, claiming that the manufacturer's use of Crazy Horse's name on its product was defamatory and negligent. *Hornell*, 133 F.3d at 1089. The manufacturer did not conduct its activities within the reservation or even within the same state as the reservation. *Hornell*, 133 F.3d at 1091. The court noted that the *Montana* exceptions did not apply to activities occurring outside the reservation:

> Indian tribes, do, however, "retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians *on their reservations*." *Montana*, 450 U.S. at 565, 101 S. Ct. at 1258 (emphasis added). The operative phrase is "on their reservations." Neither *Montana* nor its progeny purports to allow Indian tribes to exercise civil jurisdiction over the activities or conduct of non-Indians occurring *outside their reservations*.
>
> . . . Thus, because the conduct and activities at issue here did not occur on the Rosebud Sioux Reservation, we do not believe *Montana*'s discussion of activities of non-Indians on fee land within a reservation is relevant to the facts of this case.

*Hornell*, 133 F.3d at 1091. Similarly, the *Montana* analysis is not applicable here, as the activities occurred outside the reservation.

¶15 This reading of *Montana* is further supported by *Maxa v. Yakima Petroleum, Inc.*, 83 Wn. App. 763, 924 P.2d 372 (1996). In *Maxa*, the plaintiff, a non-Indian, sued Yakima Petroleum, Inc., to recover on some agreements. *Maxa*, 83 Wn. App. at 765-66. Yakima Petroleum was a corporation of the Yakama Indian Nation. *Maxa*, 83 Wn. App. at 765. Because the dispute did not clearly arise either

---

regulate it. *Hicks*, 533 U.S. at 359-60. The Court was not faced with a scenario that involved land entirely off the reservation.

on or off the reservation, the court applied *Montana* and held that the negligible threat to tribal self-government, coupled with the state's interest in enforcing contracts, gave the state court subject matter jurisdiction. *Maxa*, 83 Wn. App. at 769-70. But the court noted that if the action had arisen off the reservation, then the state court would have had exclusive subject matter jurisdiction. *Maxa*, 83 Wn. App. at 769.

¶16 Additional cases are consistent with this analysis. This court has recently held that state court subject matter jurisdiction did not exist in an employment dispute that arose in an Indian casino. *Rodriguez v. Wong*, 119 Wn. App. 636, 82 P.3d 263 (2004). The court applied the *Montana* analysis and found that both exceptions were fulfilled. *Rodriguez*, 119 Wn. App. at 641-43. However, the conduct in question occurred within an Indian reservation. *Rodriguez*, 119 Wn. App. at 640. But in another employment case where the discriminatory conduct took place both inside and outside Indian country, the Minnesota Supreme Court held that state courts had jurisdiction to hear the former employee's claims. *Gavle v. Little Six, Inc.*, 555 N.W.2d 284, 290-91 (Minn. 1996). The court stated that "we find no federal prohibition on state court consideration of civil claims arising out of the acts of Indian business entities occurring outside of Indian country." *Gavle*, 555 N.W.2d at 290. Thus, both state and federal case law dictate that the *Montana* analysis does not apply here and that the state court has jurisdiction. Accordingly, the trial court's dismissal of this case for lack of subject matter jurisdiction was incorrect.

¶17 We note that the dismissal of the claims against Braman for lack of subject matter jurisdiction was also incorrect. Insofar as the claims are against Braman in his capacity as an agent of CTEC and CTSC, the state court has jurisdiction, as the events occurred outside the reservation. In addition, it is not clear whether there is a separate claim against Braman based on his individual negligence. Any such claim would also be properly brought in state court.

### III. Tribal Sovereign Immunity

¶18 Respondents CTEC and CTSC argue that they enjoy the Tribe's governmental sovereign immunity from suit because for all legal purposes they are the Tribe. Respondents reason that they have immunity because they were created by the Tribe for the Tribe's governmental and economic benefit. We find that CTEC, CTSC, and Braman do not enjoy the Tribe's sovereign immunity.

■ ¶19 Tribal immunity is a matter of federal law. *Kiowa Tribe v. Mfg. Techs., Inc.*, 523 U.S. 751, 759, 118 S. Ct. 1700, 140 L. Ed. 2d 981 (1998). An Indian tribe is subject to suit only when Congress has authorized the suit or the tribe has waived its immunity. *Kiowa Tribe*, 523 U.S. at 754. Tribal immunity has been sustained regardless of where the tribal activities occurred. *Kiowa Tribe*, 523 U.S. at 754. Further, it has been sustained even when the tribe has engaged in distinctly commercial enterprises.[4]

■ ¶20 Some courts have held without analysis that immunity inheres to a tribal corporation because "an action against a tribal enterprise is, in essence, an action against the tribe itself." *Local IV-302 Int'l Woodworkers Union v. Menominee Tribal Enters.*, 595 F. Supp. 859, 862 (E.D. Wis. 1984). A different approach was articulated in *Runyon ex rel. B.R. v. Ass'n of Village Council Presidents*, 84 P.3d 437 (Alaska 2004). The *Runyon* court held that an entity associated with a tribe takes on tribal sovereign immunity only if the tribe is the real party in interest. *Runyon*, 84 P.3d at 440. The court explained that "[t]he entity's financial relationship with the tribe is therefore of paramount importance—if a judgment against it will not reach the tribe's assets or if it lacks the 'power to bind or obligate the funds

---

[4] In *Kiowa Tribe*, a tribal entity called Kiowa Industrial Development Commission bought stock from a company and signed a promissory note in the name of the Kiowa Tribe. *Kiowa Tribe*, 523 U.S. at 753. The Kiowa Tribe later defaulted on the note, and the company sued the Tribe in state court. *Kiowa Tribe*, 523 U.S. at 754. Although the *Kiowa Tribe* Court noted that tribal sovereign immunity "can be challenged as inapposite to modern, wide-ranging tribal enterprises extending well beyond traditional tribal customs and activities," it nonetheless deferred to Congress and upheld immunity for the Kiowa Tribe. *Kiowa Tribe*, 523 U.S. at 757-58, 760.

of the [tribe],' it is unlikely that the tribe is the real party in interest." *Runyon*, 84 P.3d at 440 (alteration in original). The court concluded that the entity at issue, a nonprofit Alaska corporation consisting of native villages did not bind the assets of the villages and so did not share the villages' tribal immunity.[5] *Runyon*, 84 P.3d at 438, 441. We believe this to be the more reasoned approach.

¶21 Under the *Runyon* analysis, CTEC and CTSC do not share the Tribe's immunity. The Tribe is not liable for CTEC's debts and obligations, nor is it construed as a "joint obligor, cosignor, or surety of the corporation." The articles further provide that CTEC may not

| | |
|---|---|
| 7.1.1 | Expressly or impliedly enter into agreements of any kind on behalf of the Tribes; |
| 7.1.2 | Pledge the credit of the Tribes; |
| 7.1.3 | Dispose of, pledge, or otherwise encumber real or personal property of the Tribes; |
| 7.1.4 | Secure loans or incur indebtedness requiring any obligation, contribution or guarantee on the part of the Tribes; |
| 7.1.5 | Waive any right of, or release any obligation owed to the Tribes; |
| 7.1.6 | Waive any other rights, privileges or immunities of the Tribes; |
| 7.1.7 | Sell, mortgage or lease for a period of time exceeding that allowed by federal law, any trust or restricted lands within the Colville Reservation; |
| 7.1.8 | Otherwise bind or obligate the Tribes. |

---

[5] At least two other courts have found tribal insulation from corporate debts to be a relevant factor in determining whether the entity shares the tribe's immunity. In *Dixon v. Picopa Construction Co.*, 160 Ariz. 251, 256, 772 P.2d 1104 (1989), the Arizona Supreme Court noted that the company had purchased liability insurance to cover its negligence and that a limited liability clause in the company's charter insulated the tribe from the company's debts. The court found this to be evidence that the tribe intended the company to be liable for its own torts, and thus relevant to whether the company shared the tribe's immunity. *Dixon*, 160 Ariz. at 257. In *Ransom v. St. Regis Mohawk Education & Community Fund, Inc.*, 86 N.Y.2d 553, 559, 658 N.E.2d 989, 635 N.Y.S.2d 116 (1995), the court noted that one of the most important factors in determining whether an entity shared a tribe's immunity was "whether a suit against the corporation will impact

CTSC's articles contain similar provisions. These provisions demonstrate CTEC's and CTSC's independence from the Tribe. Thus, under the *Runyon* analysis, tribal sovereign immunity should not be extended to CTEC and CTSC.[6]

¶22 CTEC and CTSC argue that they are immune from suit because they were created by the Tribe for the Tribe's governmental and economic benefit. The cases that they cite for this proposition are mainly federal and address whether the business entity is the same as the tribe for the purposes of a particular federal statute.[7] We do not believe these cases are sufficiently analogous to this state tort law claim to be instructive.

¶23 We note that, like CTEC and CTSC, Braman is also not immune from suit. Insofar as he is sued in his capacity as an agent of CTEC and CTSC, he may not share their immunity because they are not immune. In addition, to the extent he is sued in his individual capacity, he is also not immune from suit.

IV. Other Issues

¶24 Wright asserts that if he is denied the opportunity to litigate his claims in state court, he will be left with no adequate compensatory remedies. He claims that if he is forced to bring his claims in tribal court, he can recover only declaratory and injunctive relief. This, Wright asserts, violates chapter 49.60 RCW's contemplation of actual dam-

the tribe's fiscal resources, and whether the subentity has the 'power to bind or obligate the funds of the [tribe].'" (Alteration in original.)

[6] Additional case law militates against granting CTEC and CTSC immunity. Other courts have developed varying tests for determining when tribal sovereign immunity extends to a tribal business entity. *See, e.g., Trudgeon v. Fantasy Springs Casino*, 71 Cal. App. 4th 632, 638-39, 84 Cal. Rptr. 2d 65 (1999); *Gavle*, 555 N.W.2d at 294; *Ransom*, 86 N.Y.2d at 559; *Dixon*, 160 Ariz. at 257-58. The United States Supreme Court has not established a test.

[7] *See, e.g., EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1082 (9th Cir. 2001) (holding that because regulation of the employment relationship between a tribal entity and an employee touches matters of tribal self-governance, the ADEA (Age Discrimination in Employment Act) is applicable to tribes only if Congress explicitly so indicated); *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1188 (9th Cir. 1998) (concluding that a nonprofit organization incorporated by two tribes is a "tribe" for the purposes of a Title VII exemption).

ages and attorney fees. As we hold that the state court does have subject matter jurisdiction, we need not reach this issue.

■ ¶25 Wright claims that, as a prevailing plaintiff, he is entitled to attorney fees under RCW 49.60.030(2). However, the merits of Wright's claim have not yet been determined, and entitlement to fees under RCW 49.60.030(2) cannot be determined until after a trial on the merits. *Hinman v. Yakima Sch. Dist. No. 7*, 69 Wn. App. 445, 452-53, 850 P.2d 536 (1993).

¶26 Reversed and remanded for trial.

ELLINGTON, A.C.J., and KENNEDY, J., concur.

Reconsideration denied July 13, 2005.

Review granted at 156 Wn.2d 1020 (2006).