**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: August 11, 2014

Docket No. 32,015

TIFFANY SOUTH,

       Plaintiff-Appellant,

v.

POLICE CHIEF ISAAC LUJAN, POLICE
CAPTAIN WILL DURAN, and MARY-
ALICE BROGDON, in their individual capacities,

       Defendants-Appellees.

APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY
Louis P. McDonald, District Judge

Law Office of George Geran
George T. Geran
Santa Fe, NM

for Appellant

Sonosky, Chambers, Sachse, Milch & Brownell, LLP
David C. Mielke
Albuquerque, NM

for Appellees

## OPINION

**BUSTAMANTE, Judge.**

**{1}** Plaintiff-Appellant Tiffany South—a former officer with the Sandia Pueblo Police Department (Plaintiff) filed a complaint for violation of the New Mexico Human Rights Act (NMHRA), retaliatory discharge, and tortious inference with contract against Defendants-Appellees Isaac Lujan, William Duran, and Mary-Alice Brogdon (collectively, Defendants) in their individual capacities. The district court granted Appellees' motion to dismiss based

on lack of jurisdiction. Because the record on appeal is insufficient to permit review, we reverse and remand for factual development on the issues relevant to state court jurisdiction.

**BACKGROUND**

**{2}** Plaintiff, who had been an officer with the Sandia Pueblo Police Department (the Department), alleged that Defendants Lujan and Duran, the Chief and Captain of the Department, respectively, had sexually harassed her and that, together with Defendant Brogdon, the employee relations manager for Sandia Pueblo, had retaliated against her after she complained of the sexual harassment. She also maintained that Defendants interfered with her employment contract with Sandia Pueblo "with the explicit motive of terminating [her employment] for false reasons[.]"

**{3}** Plaintiff is not Indian. Defendant Lujan is Indian and a member of the Pueblo. Defendants Duran and Brogdon are neither Indian nor members of the Pueblo. Sandia Pueblo is not named as a party in the complaint.

**{4}** Defendants moved for dismissal of the complaint, arguing that the NMHRA did not apply to the Pueblo and its employees and that, in any case, Plaintiff's claims were barred by the Pueblo's sovereign immunity and, therefore, the district court lacked jurisdiction to hear the complaint. *See* Rule 1-012(B)(1), (2) NMRA. They also argued that the suit must be dismissed because the Pueblo is a necessary party to the suit which cannot be joined. *See* Rule 1-019 NMRA. After a hearing, the district court granted Defendants' motion and dismissed the complaint with prejudice. Plaintiff appealed. Additional facts are provided as pertinent to our discussion.

**DISCUSSION**

**{5}** This case involves a suit by a non-Indian Plaintiff against one Indian and two non-Indian employees of the Department, in their individual capacities, for conduct that allegedly occurred both within and outside of Indian country. *See* 18 U.S.C. § 1151 (2012) (defining "Indian country" to include "all land within the limits of any Indian reservation under the jurisdiction of the United States Government"). Because our jurisprudence on state court jurisdiction over matters involving Indians or tribes frequently depends on factors such as the location or source of the underlying transaction or occurrence, whether the parties are Indian or not, and the interests at stake, the overarching question presented—does the state court have subject matter jurisdiction over these claims?—itself depends on the answers to a number of components. *See, e.g.*, *Found. Reserve Ins. Co., Inc. v. Garcia*, 1987-NMSC-024, ¶ 8, 105 N.M. 514, 734 P.2d 754 (relying on fact that the transaction giving rise to the claim occurred outside of the reservation); *State Sec., Inc. v. Anderson*, 1973-NMSC-017, ¶ 14, 84 N.M. 629, 506 P.2d 786 ("In this case there is not a proprietary interest in land, one Indian is not suing another Indian and the transaction did not arise in Indian country."); *Alexander v. Cook*, 1977-NMCA-069, ¶¶ 17-19, 90 N.M. 598, 566 P.2d 846 (holding that state court jurisdiction over a suit for damages between non-Indians for "business activities"

2

that occurred on Indian land did not infringe on tribal sovereignty). Here, these include, for instance, whether the conduct complained of occurred on the reservation, whether the conduct complained of occurred within the scope of employment, whether the Pueblo is a necessary party, and to what extent the Pueblo has sought to regulate disputes between its employees when employees are sued in tort in their individual capacities. These questions are fact-intensive inquiries. *See*, *e.g.*, *Rivera v. N.M. Highway & Transp. Dep't*, 1993-NMCA-057, ¶ 6, 115 N.M. 562, 855 P.2d 136 ("Generally, whether an employee is acting in the course and scope of employment is a question of fact."); *Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶ 42, 132 N.M. 207, 46 P.3d 668 ("The determination of whether a particular nonparty should be joined under Rule 1-019 is heavily influenced by the facts and circumstances of each case." (internal quotation marks and citation omitted)).

**{6}** The parties argued these issues below and reiterate them on appeal. In addition, they dispute whether the Pueblo's sovereign immunity applies to shield Defendants from suit in state court. However, because the district court neither made factual findings nor indicated the legal basis for its decision, there is no transcript of the hearing in the record, and the parties did not develop a factual record to support the district court's ruling or adequately develop their arguments on appeal, we are unable to review whether the district court properly granted Defendants' motion to dismiss.

**{7}** We begin by explaining our standard of review and why we do not accept as true the facts alleged in the complaint. When considering motions to dismiss based on a failure to state a claim under Rule 1-012(B)(6) or lack of standing, we "accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party." *Forest Guardians v. Powell*, 2001-NMCA-028, ¶ 5, 130 N.M. 368, 24 P.3d 803 (lack of standing); *Delfino v. Griffo*, 2011-NMSC-015, ¶ 9, 150 N.M. 97, 257 P.3d 917 ("In reviewing a district court's decision to dismiss for failure to state a claim, we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of sufficiency of the complaint." (internal quotation marks and citation omitted)). Similarly, "[w]hen reviewing a district court's grant of a motion [for judgment on the pleadings based on sovereign immunity], we accept as true the facts pleaded in the complaint, and we review de novo the district court's application of the law to those facts." *Guzman v. Laguna Dev. Corp.*, 2009-NMCA-116, ¶ 16, 147 N.M. 244, 219 P.3d 12; *see* Rule 1-012(C).

**{8}** But this standard does not always apply when reviewing the district court's ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 1-012(B)(1). The difference lies in the type of attack—facial or factual—mounted by the movant.

> In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. [In contrast, in a factual attack,] a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.

*Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (citations omitted); *see Hamaatsa, Inc. v. Pueblo of San Felipe*, 2013-NMCA-094, ¶ 9, 310 P.3d 631, *cert. granted*, 2013-NMCERT-009, 311 P.3d 452 ("As conceded by the Pueblo in its argument to the district court and in its brief in chief on appeal, the Pueblo's purely facial challenge to jurisdiction compels us to accept as true all material allegations of the complaint and also to construe the complaint in favor of the complaining party."); *see also Genberg v. Porter*, 935 F. Supp. 2d 1094, 1102 (D. Colo. 2013), *aff'd in part, appeal dismissed in part*, No. 13-1140, 2014 WL 1876246 (10th Cir. May 12, 2014) ("When a party moves to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the attack is either a facial attack to the allegations of the complaint or a factual attack.")  This rule is based on the fundamental nature of jurisdictional questions: "Because at issue in a factual [1-012(B)(1)] motion is the [district] court's jurisdiction—its very power to hear the case—there is substantial authority that the [district] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

**{9}**     When the challenge is factual, "[a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule [1-012(B)(1)].  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a . . . motion [for summary judgment]." *Holt*, 46 F.3d at 1003 (citations omitted).  "However, a court is required to convert a Rule [1-012(B)(1)] motion to dismiss into a Rule [1-012(B)(6)] motion or a . . . summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Id.*

**{10}**     Here, Defendants challenge several factual allegations in the complaint that bear on subject matter jurisdiction, such as whether the alleged conduct was in Defendants' scope of employment and the location of the alleged conduct, and thus their attack is a factual one. We do not, therefore, presume the truthfulness of the complaint and instead rely on factual findings by the district court pertaining to subject matter jurisdiction.

**{11}**     Where factual determinations are essential to a district court's ruling but are inadequately developed for appeal, this Court may remand for entry of findings of fact because "[a]s an appellate court, we will not originally determine the questions of fact." *Guidry v. Petty Concrete Co.*, 1967-NMSC-048, ¶ 13, 77 N.M. 531, 424 P.2d 806.  For example, in *In re Begay*, this Court considered whether the district court erred in denying a motion to dismiss based on lack of subject matter jurisdiction.  1988-NMCA-081, ¶ 14, 107 N.M. 810, 765 P.2d 1178.  After determining that the question of jurisdiction was "dependent upon resolution of factual questions" and that the district court did not enter any relevant finding of fact, this Court remanded for entry of findings.  *Id.* ¶¶ 14, 22. Although it "recognize[d] that findings of fact and conclusions of law are not required when ruling on a motion[,]" *see* Rule 1-052(A) NMRA, this Court nevertheless stated that express findings are "preferable" when the district court's ruling rests on resolution of facts.  *In re Begay*, 1988-NMCA-081, ¶ 17.  It concluded, "In the absence of factual findings or some statement by the [district] court explaining the basis for its decision (including any factual

4

determinations supporting the decision), a reviewing court is unable to decide an appeal without great difficulty." *Id.*

{12}     Here, there are two important issues that are inadequately developed for review. The first is whether Defendants' alleged conduct occurred within the scope of employment by the Pueblo.[1] This question is important to the ultimate determination of jurisdiction because it goes to whether state court jurisdiction would infringe on the Pueblo's sovereignty, as well as to whether the Pueblo's sovereign immunity prevents suit against Defendants. *See, e.g.*, *Evans v. McKay*, 869 F.2d 1341, 1348 n.9 (9th Cir. 1989) ("While officials and agents of an Indian tribe do not have the same immunity as the tribe itself, tribal immunity nevertheless extends to individual tribal officials while acting in their representative capacity and within the scope of their authority." (internal quotation marks and citations omitted)); *Rodriguez v. Wong*, 82 P.3d 263, 266-267 (Wash. Ct. App. 2004) (relying in part on the fact that the complaint alleged conduct within the scope of employment to hold that state court jurisdiction would infringe on the tribe's sovereignty). It is also relevant to whether the Pueblo is a necessary party, since it bears on whether the Pueblo has an interest in the outcome of the suit. *See Srader v. Verant*, 1998-NMSC-025, ¶ 22, 125 N.M. 521, 964 P.2d 82 ("Courts demonstrate a willingness to bring in an absent person whenever there exists a reasonable possibility that the person's interests will be affected by the conclusion of an action to which he has not been made a party.").

{13}     Our review of the scope of employment issue is hindered on several fronts. First, it is unclear from Plaintiff's briefs and complaint whether she alleges that Defendants acted outside the scope of their respective authority or not. For instance, she states, "[t]he claims involved . . . arise out of the employment of each of the parties by the Pueblo." Elsewhere, however, she makes a statement directly to the contrary, that she "pled [her] claims against [Defendants] acting as individuals acting outside of the scope of their employment." She repeatedly refers to the supervisory nature of Defendants' positions in the briefs and complaint. The rest of the briefing sheds little light on Plaintiff's position. For instance, Plaintiff appears to acknowledge a "majority rule" that "[u]sually the distinction between immune employees and non-immune employees is that tribal officials acting in their official

---

[1] We note that "[t]he general rule is that sexual harassment by a supervisor is not conduct within the scope of employment." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 757 (1998); *see Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 29, 135 N.M. 539, 91 P.3d 58. As we understand Plaintiff's briefing (although it is far from clear), Plaintiff appears to rely on this principle in support of her position that the NMHRA permits suits against individuals. It is also unclear from the briefing whether Plaintiff also argues that Defendants are not subject to the Pueblo's sovereign immunity by virtue of this rule. In either case, we decline to consider undeveloped arguments and make no statement as to the applicability of *Ellerth* or *Ocana* to the present matter. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

capacity and within their scope of authority enjoy the immunity of their tribe" but then appears to implicitly assume that Defendants were acting in the scope of employment and argues that, notwithstanding that rule, immunity applies only to tribe employees "who can officially speak for the tribe" and that Defendants here did not have that power or, alternatively, that a scope of employment analysis has no relevance to claims of discrimination. In the complaint, Plaintiff states that the complained of "behavior [wa]s plead, alternatively, as within and without the scope of employment[.]"

**{14}** More importantly given the burden of proof, Defendants' answer brief does no better in assisting the Court to resolve this issue. *See State v. Begay*, 1987-NMCA-025, ¶ 6, 105 N.M. 498, 734 P.2d 278 ("Demonstrating a lack of jurisdiction is [the] defendant's burden."). Defendants argue that "each [Defendant] was employed by the Pueblo in a managerial capacity and that the first two were acting in that capacity when . . . Plaintiff [was] discharged.")[2] They repeat this assertion several times. They do not, however, direct us to anything in the record supporting it or that would permit us to infer that the district court resolved the question one way or the other. *See In re Application of Metro. Invs., Inc.*, 1990-NMCA-070, ¶ 15, 110 N.M. 436, 796 P.2d 1132 ("[A]rguments of counsel are not evidence."). Since the district court entered no findings on this issue, it remains unresolved. *See Guidry*, 1967-NMSC-048, ¶ 13 (stating resolution of factual disputes is not the role of this Court).

**{15}** The second issue is whether state court jurisdiction would infringe on the Pueblo's sovereignty under the facts of this case. This question derives from *Williams v. Lee*, in which the Supreme Court stated that the primary inquiry when determining whether a state court has jurisdiction over a matter involving a non-Indian and an Indian is "whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." 358 U.S. 217, 220 (1959); *see State ex rel. Dep't of Human Servs. v. Jojola*, 1983-NMSC-028, ¶ 8, 99 N.M. 500, 660 P.2d 590 ("This test is principally applicable in situations involving a non-Indian party."). The so-called "infringement test" set out in *Williams* "was designed to resolve [the] conflict [that occurs when both a state and a tribe may assert jurisdiction] by providing that the [s]tate could protect its interest up to the point where tribal self-government would be affected." *McClanahan v. State Tax Comm'n of Arizona*, 411 U.S. 164, 179 (1973); *see Hinkle v. Abeita*, 2012-NMCA-074, ¶ 22, 283 P.3d 877 (reaffirming New Mexico's reliance on the infringement test). Under that test, courts consider "(1) whether the parties are Indians or non-Indians; (2) whether the cause of action arose within the Indian reservation; and (3) the nature of the interest to be protected." *Hartley v. Baca*, 1981-NMCA-080, ¶ 9, 97 N.M. 441, 640 P.2d 941. It is clear that in the context of this case, the answers to these questions are somewhat thorny, because the suit involves allegations by a non-Indian against both Indians and non-Indians, for conduct alleged to have occurred both on and off the reservation, either within or outside of the scope

---

[2]Defendants maintain that Defendant Brogdon was no longer employed by the Tribe when Plaintiff was discharged.

6

of employment. Given this posture, the interests of the parties, as well as those of the State of New Mexico and the Pueblo, are also not readily apparent, especially in light of the fact that Defendants are named in their individual capacities. Thus, the answers to factual questions as to the location of the alleged conduct, whether the conduct was within the scope of employment, whether the Pueblo is a necessary party, and so forth are essential to review of this issue.

{16}    In addition, Defendants fail to explain how state court jurisdiction would infringe on the Pueblo's sovereignty in this case. Defendants assert that "Plaintiff[']s claims here go to the heart of the Pueblo's interest in operating a vital department of tribal government and in having and enforcing its own employment laws and policies." They contend that "[a] more direct threat to a tribe's self-governing powers . . . can hardly be imagined." If the Pueblo was named as a defendant, this argument would hold more sway. However, Defendants fail to fully develop a factual basis for the infringement test. Defendants' application of the infringement test rests on their assertions that the suit involves an Indian and that "the alleged actions and inactions giving rise to Plaintiff[']s claims arose entirely on the Pueblo." The first assertion is not contested by Plaintiff, but neither does it address the two non-Indian Defendants. Plaintiff contests the second assertion, as discussed above. Thus, Defendants' analysis of the first two prongs of the infringement test is either incomplete or rests on disputed facts that the district court did not resolve. As to the third prong, other than counsel's assertions, Defendants do not explain how a suit against the Defendants *in their individual capacities* under the NMHRA[3] and common law torts would have an impact on the Pueblo's sovereignty. Even if we assumed that the state court does not have jurisdiction over the Indian defendant because he has an interest in being heard in Pueblo court under the laws of the Pueblo, *see Hinkle*, 2012-NMCA-074, ¶ 5 (stating that an Indian defendant had an interest in being heard in the tribal court), Defendants do not address how state court jurisdiction over the two non-Indian tribe employees, as individuals, infringes  on tribal authority, especially if they were acting outside their scope of employment. *See Alexander*, 1977-NMCA-069, ¶ 17 ("The resolution of [a] dispute [between non-Indians for damages] by a New Mexico court does not infringe on Indian government any more than state court jurisdiction over crimes between non-Indians that arise on Indian land."); *Cordova v. Holwegner,* 971 P.2d 531, 538 (Wash. Ct. App. 1999) ("[W]e find nothing in the record indicating that the tribe has exclusive . . . jurisdiction over this garden-variety tort litigation between non[-]members that arose . . . on the closed area of the reservation."); *Cuprak v. Sun Int'l Hotels Ltd.*, No. CV 970112045S, 1997 WL 663299, at *4 (Conn. Super. Ct. Oct. 9, 1997) (holding no tribal infringement in state court jurisdiction over a suit between a non-Indian corporation operating a casino for the Mohegan tribe and a non-Indian employee of the corporation and stating that, although the alleged conduct occurred both on and off the reservation and the tribe had an economic interest, "the [t]ribe's interest is significantly weakened since the tribe is neither a party to this action nor are tribal assets at stake. On the

---

[3]Plaintiff appears to agree that her NMHRA claim does not apply to Defendant Lujan on the basis that he is not subject to state law.

7

other hand, the state of Connecticut has a real interest in adjudicating disputes that arise between its citizens."); *but see Rodriguez*, 82 P.3d at 267 (holding that state court jurisdiction impermissibly infringed on tribal sovereignty where the tribe had "exercised its jurisdiction to develop its own non-discrimination . . . policies" and the plaintiff was a non-Indian employee of the tribe).[4]

**{17}** We conclude that additional development of the facts relevant to the infringement test and the extent of infringement posed under the specific posture of this case is necessary. We are aware that some New Mexico cases have been decided on the basis of a party's failure to explain how tribal governance was impinged by state court jurisdiction. *See, e.g., Tempest Recovery Servs., Inc. v. Belone*, 2003-NMSC-019, ¶ 15, 134 N.M. 133, 74 P.3d 67 ("New Mexico can exercise concurrent jurisdiction over the breach of contract action because we cannot see, and [the defendant] does not demonstrate, how concurrent jurisdiction would impinge upon tribal sovereignty in the present context."); *Wacondo v. Concha*, 1994-NMCA-040, ¶ 13, 117 N.M. 530, 873 P.2d 276 ("The [d]efendant has failed to show how recognizing concurrent jurisdiction in tribal and state courts would impinge upon tribal sovereignty in the present context."); *G. M. Shupe, Inc. v. Bureau of Revenue*, 1976-NMCA-040, ¶ 6, 89 N.M. 265, 550 P.2d 277 ("In the case before us the taxpayer has failed to point to any specific way in which the tribe will be affected, relying instead on a general invocation of sovereignty. . . . There is no indication from the record that the [p]ueblo will sustain any direct effects as a result of the tax, and therefore no conflict with tri[b]al sovereignty is shown."). But we decline to reverse on this basis alone given the near total lack of factual development below. We therefore remand for additional proceedings consistent with this Opinion.

**{18}** Finally, to the extent Defendants maintain that Plaintiff's suit is "in reality against the Pueblo" in support of their position that the Pueblo's sovereign immunity applies to bar suit, this question too hinges on resolution of facts, such as whether the conduct was within the scope of employment, whether the damages requested implicate the Pueblo, and whether a judgment would have an impact on Pueblo governance. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984) ("[A] suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act."), *superseded by statute as stated in Joshua B. v. New Trier Twp. High Sch. Dist.*, 770 F. Supp. 431 (N.D. Ill. 1991) (internal quotation marks and citation omitted). The facts related to whether the Pueblo is the real party in interest are also pertinent to whether the Pueblo is a necessary party and to the third prong of the infringement test. Because the record provides no resolution of the facts behind these

---

[4]We note that the defendants in *Rodriguez* argued that even though the defendants were named as individuals, the suit was really against the tribe, 82 P.3d at 265, and that, unlike here, the court permitted the tribe to appear as amicus curiae, *id.*, and the complaint alleged only conduct that occurred in the scope of employment. *Id.* at 266.

questions, we are unable to review this argument. *See Guidry*, 1967-NMSC-048, ¶ 13.

**CONCLUSION**

**{19}** There being no factual basis for the district court's ruling in the record, we reverse and remand to the district court for further proceedings consistent with this Opinion.

**{20}**   **IT IS SO ORDERED.**

                                             _____

                                             **MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

9