This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40743**

**PHILLIP TRUJILLO and SALVADOR GONZALEZ,**

      Plaintiffs-Appellants,

v.

**ROGER FOSTER; PATRICK SEGURA; TIMOTHY MENCHEGO; GREG AGUINO; BONADELLE CANDELARIA, in their individual capacities,**

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**James A. Noel, District Court Judge**

Law Office of George Geran
George T. Geran
Santa Fe, NM

for Appellants

Rothstein Donatelli LLP
Richard W. Hughes
Santa Fe, NM

for Appellees

## MEMORANDUM OPINION

**WRAY, Judge.**

**{1}** Plaintiffs Phillip Trujillo and Salvador Gonzalez were terminated from their positions with the Pueblo of Santa Ana's (the Pueblo) Police Department (the Department) and sued Defendants Roger Foster, Patrick Segura, Timothy Menchego,

Greg Aguino, and Bonadelle Candelaria, each in their individual capacity. The district court granted Defendants' motion to dismiss and (1) declined to exercise subject matter jurisdiction because to do so "would undermine the authority of tribal courts over Pueblo affairs, and thus would infringe on the right of the Pueblo's sovereign authority to govern itself"; and (2) determined that Defendants would be entitled to sovereign immunity if the state court had jurisdiction. Plaintiffs appeal, and we affirm.

## DISCUSSION

**{2}** Plaintiffs request that this Court reverse the district court's order granting Defendants' motion to dismiss.[1] In its order, the district court determined that (1) "application of New Mexico law . . . would infringe on the right of the Pueblo's sovereign authority to govern itself"; and (2) the Pueblo was the real party in interest and "Plaintiffs' claims in this case are barred by sovereign immunity." This Court reviews "an appeal from an order granting or denying a motion to dismiss for lack of jurisdiction" de novo. *Hamaatsa, Inc. v. Pueblo of San Felipe*, 2017-NMSC-007, ¶ 17, 388 P.3d 977. In motion to dismiss briefing, the parties provided additional "facts upon which subject matter jurisdiction depend[ed]," and the district court could therefore consider evidence beyond the allegations in the complaint to make factual determinations to resolve the jurisdictional dispute. *See South v. Lujan*, 2014-NMCA-109, ¶¶ 8-9, 336 P.3d 1000 (internal quotation marks and citation omitted). Normally, we would review the district court's factual determinations under a substantial evidence standard. *See Ponder v. State Farm Mut. Auto Ins. Co.*, 2000-NMSC-033, ¶ 7, 129 N.M. 698, 12 P.3d 960. But because on appeal, Plaintiffs concede the district court's factual determinations, we only review the application of law to those facts. *See id.*

**{3}** Plaintiffs primarily challenge the dismissal by arguing that *Lewis v. Clarke*, 581 U.S. 155 (2017), created a new test for tribal sovereign immunity and implicitly overruled *Williams v. Lee*, 358 U.S. 217 (1959), as well as the application of what New Mexico courts have referred to as "tribal sovereign authority." *See Haamatsa, Inc.*, 2017-NMSC-007, ¶ 26 (distinguishing tribal sovereign immunity and "tribal sovereign authority"). Plaintiffs contend that under this new test "actions against tribal individuals do not implicate sovereign immunity, or involve the relevant tribe directly enough to make the tribe a real party in interest," and because in this case, Defendants were named in their individual capacities in the complaint, tribal sovereign immunity does not apply. We first address Plaintiffs' overarching argument that *Lewis* overruled *Williams* and the concept of improper infringement on tribal sovereign authority adopted by *Williams* to limit state court's subject matter jurisdiction over matters occurring on Indian lands. Then, we review the district court's order granting the motion to dismiss based on (1) improper infringement, and (2) tribal sovereign immunity.

---

[1] Plaintiffs additionally request that this Court reverse the district court's order denying their motion to reconsider but fail to make any arguments on appeal related to this order. We therefore only consider Plaintiffs' arguments regarding the motion to dismiss. *See Battishill v. Ingram*, 2024-NMCA-001, ¶ 2 n.1, 539 P.3d 1203.

**I.     The *Lewis* Court Did Not Overrule the *Williams* Infringement Test**

**{4}**     Plaintiffs' arguments on appeal rely on their contention that *Lewis* implicitly overruled *Williams* and therefore, the jurisdictional analysis that arose from *Williams* has been "subsumed" into a simplified version of tribal sovereign immunity. Plaintiffs assert that the new test for whether tribal sovereign immunity applies under *Lewis* only requires courts to examine the caption of a complaint, and if the defendants are listed in their individual capacities, the suit can go forward without further inquiry. As we explain, we reject Plaintiffs' view of tribal sovereign immunity and conclude that while *Lewis* has amended the tribal sovereign immunity analysis with respect to individual-capacity defendants, *Williams* still applies to determine whether a state court may exercise subject matter jurisdiction in certain circumstances based on concerns about infringement of tribal sovereign authority—a concept that is distinguishable from sovereign immunity. *See Hamaatsa, Inc.*, 2017-NMSC-007, ¶ 26.

**{5}**     In *Lewis*, a tribal employee who acted within the scope of employment with a tribal gaming authority was involved in a car accident on a state highway. 581 U.S. at 159-60. The petitioners in that case filed suit in state court against the respondent, who was a tribal employee. *Id.* The respondent filed a motion to dismiss on the basis of tribal sovereign immunity. *Id.* The United States Supreme Court noted that the "identity of the real party in interest dictates what immunities may be available," and that "[the d]efendants in an official-capacity action may assert sovereign immunity." *Id.* at 163. In making a determination between official and individual capacity suits, "courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Id.* at 162. The *Lewis* Court ultimately held that the suit was not against the respondent in his official capacity, but was "simply a suit against [the respondent] to recover for [their] personal actions, which will not require action by the sovereign or disturb the sovereign's property." *Id.* at 163 (internal quotation marks and citation omitted).

**{6}**     In *Williams*, a non-Indian[2] business owner that operated a general store on a reservation sued two Indian patrons in state court "to collect for goods sold them there on credit." *Williams*, 358 U.S. at 217-18. The question in *Williams* was not whether tribal sovereign immunity applied, but whether the state or tribal court had jurisdiction over the action. *Id.* at 218. In deciding whether the state court had jurisdiction, the United States Supreme Court explained that "the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." *Id.* at 220. The *Williams* Court held that the

> exercise of state jurisdiction here would undermine the authority of the
> tribal courts over Reservation affairs and hence would infringe on the right
> of the Indians to govern themselves. It is immaterial that respondent is not

---

2We use the term "Indian" in this opinion to mirror the language used in *Williams* and subsequent controlling authority interpreting that case.

> an Indian. He was on the Reservation and the transaction with an Indian took place there.

*Id.* at 223. The holding that the state court could not exercise subject matter jurisdiction over the action did not relate to whether the defendants were immune from suit. Conversely, *Lewis* did not address whether the state court could properly exercise jurisdiction over the tort action arising from a car accident that occurred outside of tribal lands, only whether the tribal employee was shielded from suit by sovereign immunity.

**{7}** In analyzing sovereign immunity for individual-capacity claims the *Lewis* Court had no occasion to overrule the analysis implemented by *Williams* regarding the state court's exercise of subject matter jurisdiction over incidents between tribal members and nonmembers. Our Supreme Court in *Hamaatsa, Inc.* explained the difference and described tribal sovereign immunity as "the plenary right to be free from having to answer a suit," and "tribal sovereign authority" as "the extent to which a tribe may exercise jurisdictional authority over lands the tribe owns to the exclusion of state jurisdiction." *Hamaatsa, Inc.*, 2017-NMSC-007, ¶ 26. In this way, *Lewis* coexists with *Williams* because each case addresses a different doctrine—*Lewis*, who can be sued, and *Williams*, which court can exercise jurisdiction over the suit. We have neither the authority nor the inclination to hold differently. *See State v. Lea*, 2023-NMCA-061, ¶ 15, 535 P.3d 754 (observing that this Court is "governed by the decisions of the New Mexico Supreme Court" (internal quotation marks and citation omitted)).

**{8}** Having declined Plaintiffs' invitation to revisit the limitation of state courts to exercise jurisdiction that would infringe on tribal sovereign authority or acknowledge any implicit overruling of *Williams* by *Lewis*, we consider (1) whether the district court properly refused to exercise subject matter jurisdiction over Plaintiffs' state law claims; and (2) alternatively, whether Plaintiffs' claims would additionally be barred by tribal sovereign immunity.

## II.     The District Court's Exercise of Jurisdiction Over Plaintiffs' Suit Would Infringe on the Tribal Sovereign Authority of the Tribe

**{9}** The district court determined that Plaintiffs' state law claims against Defendants "would undermine the authority of tribal courts over Pueblo affairs, and thus would infringe on the right of the Pueblo's sovereign authority to govern itself." As we have noted, to determine "whether a state court has jurisdiction over causes of action involving Indian matters," New Mexico courts adhere to the *Williams*' infringement test and assess whether an action infringes on a tribe's sovereign authority. *Found. Rsrv. Ins. Co. v. Garcia*, 1987-NMSC-024, ¶ 6, 105 N.M. 514, 734 P.2d 754. To apply that test, we consider the following in turn: "(1) whether the parties are Indians or non-Indians; (2) whether the cause of action arose within the Indian reservation; and (3) the nature of the interest to be protected." *South*, 2014-NMCA-109, ¶ 15 (internal quotation marks and citation omitted).

**{10}** Plaintiffs in this case are not tribal members, but three of the five Defendants in this case are tribal members. Because not all Defendants are tribal members, this factor is not determinative and so we continue and evaluate the remaining factors. *See State ex rel. Dep't of Hum. Servs. v. Jojola*, 1983-NMSC-028, ¶ 8, 99 N.M. 500, 660 P.2d 590 (noting that the infringement test is particularly important "in situations involving a non-Indian party," because the test was "designed to resolve [a jurisdictional] conflict by providing that a state could protect its interest up to the point where tribal self-government would be affected").

**{11}** The cause of action arose on Pueblo lands and the nature of the interest to be protected implicates Defendants' and the Pueblo's rights to be heard in tribal court and be ruled by tribal law. *See Found. Rsrv. Ins. Co*, 1987-NMSC-024, ¶ 9. Plaintiffs do not dispute the district court's findings that (1) Plaintiffs' claims arose "from their employment as . . . Pueblo police officers"; (2) the "Pueblo police department is located on Pueblo lands"; and (3) Defendants' actions related to the suit were taken "within the exterior boundaries of the Pueblo." As we have already explained, these undisputed facts further suggest that state court jurisdiction over Plaintiffs' claims would infringe on the Pueblo's right to govern its own affairs, which include employment with the Pueblo and operation of the Department. *See Tempest Recovery Servs., Inc. v. Belone*, 2003-NMSC-019, ¶ 13, 134 N.M. 133, 74 P.3d 67 ("Indian nations . . . possess a broad measure of civil jurisdiction over the activities of non-Indians on Indian reservation lands in which the tribes have a significant interest."). Plaintiffs state that the case "arose during the period of Plaintiffs'. . . employment at the Pueblo" and that the claims contest Plaintiffs' termination from the Department. The complaint directly challenges the policies and operations of the Department, and as we discuss below, the Pueblo is the real party in interest. *See South*, 2014-NMCA-109, ¶ 18 (noting that whether the tribe is the real party in interest is relevant "to the third prong of the infringement test"). Therefore, the Pueblo has the right to have Pueblo employment disputes heard in tribal court. *See Hartley v. Baca*, 1981-NMCA-080, ¶¶ 10-11, 97 N.M. 441, 640 P.2d 941 (identifying "the nature of the interest to be protected [as] the right of [the defendant] to be heard in . . . [t]ribal [c]ourt under its tribal laws").

**{12}** The application of the infringement test using undisputed facts supports the district court's determination that allowing "the exercise of state jurisdiction here would undermine the authority of tribal courts over Pueblo affairs, and thus would infringe on the right of the Pueblo's sovereign authority to govern itself." Though not every Defendant is a Pueblo member, this is an employment dispute that occurred on Pueblo land and that challenges Pueblo policies. As a result, this employment matter demands the exercise of the Pueblo's responsibility for self-government.

### III.  Plaintiffs' Suit is Also Barred by Tribal Sovereign Immunity

**{13}** Even were we to apply *Lewis* to the exclusion of *Williams*, as Plaintiff contends we should, we must reject Plaintiffs' sovereign immunity analysis. Plaintiffs argue that under *Lewis*, "tribal sovereign immunity has no bearing on claims brought against tribal employees in their individual capacities," and because Defendants were named in their

individual capacities in the complaint, tribal sovereign immunity does not apply. But *Lewis* does not instruct courts to stop an immunity inquiry at the caption of the complaint, and in fact, instructs the opposite. 581 U.S. at 161-62. The Supreme Court in *Lewis* stated that courts must determine "whether the sovereign is the real party in interest," by assessing "whether the remedy sought is truly against the sovereign." *Id.* To determine whether the Pueblo in this case is the real party in interest, we consider whether the alleged bad "conduct was within the scope of employment, whether the damages requested implicate the Pueblo, and whether a judgment would have an impact on Pueblo governance." *See South*, 2014-NMCA-109, ¶ 18; *see also Lewis*, 581 U.S. at 163.

{14}     Regarding scope of employment, the district court determined, and Plaintiffs do not dispute, that the "Pueblo operates its own police department" and that any actions Defendants took with respect to Plaintiffs' termination from the Department arose directly from Defendants' official positions—except for Defendant Segura who "did not have the authority to terminate employees of the Pueblo's police department and was not present when those decisions were made." Instead of challenging these findings, Plaintiffs argue that Defendants did not act in the scope of their employment because they engaged in "a conspiracy to retaliate against Plaintiffs" for discovering illegal activity within the Department, which is evidence of Defendants' individualized motivation to terminate Plaintiffs' employment. Plaintiffs, however, do not explain how these factual allegations relating to a conspiracy—Plaintiffs did not plead a claim for civil conspiracy—overcome the district court's factual findings that all Defendants acted within the scope of their employment. We therefore do not consider this argument further.

{15}     The damages Plaintiffs requested for these claims and the impact the claims would have on the Pueblo government also implicate the Pueblo as a real party in interest. In the prayer for relief, Plaintiffs requested back pay, loss of fringe benefits, and "loss of future earnings and future lost benefits, like loss of pension benefits." All of these damages are directly related to Plaintiffs' employment with the Pueblo. Plaintiffs do not provide any reason why Defendants would be individually responsible for damages directly related to Plaintiffs' wrongful termination from the Department. For the same reason, Plaintiffs' claims infringe on the Pueblo's self-governance. Plaintiffs pleaded claims for discrimination, contrary to the New Mexico Human Rights Act, NMSA 1978, §§ 28-1-1 to -14 (1969, as amended through 2023), wrongful termination, retaliatory discharge, and tortious interference with contractual relations. Plaintiffs' allegations supporting these claims rely on the Pueblo's policies and procedures for running the Department and on the employment contract between Plaintiffs and the Department, all of which implicate the Pueblo's self-governance. Based on these allegations and state law claims, we agree with the district court that any judgment would likely "infringe[] upon the Pueblo's governance of its own police force."

{16}     Based on the above, we agree with the district court's finding that Defendants' actions that form the basis for the complaint were taken in their official capacities with the Department, and official capacity actions implicate the sovereign as the real party in

interest. *See Lewis*, 581 U.S. at 162 ("[L]awsuits brought against employees in their official capacity represent only another way of pleading an action against an entity of which an officer is an agent and they may also be barred by sovereign immunity." (internal quotation marks and citation omitted)). Plaintiffs have not pointed to any waiver of sovereign immunity or congressional authorization that would justify bringing suit against the Pueblo. *See Hamaatsa, Inc.*, 2017-NMSC-007, ¶ 22. We therefore conclude that the district court properly determined that the Pueblo is the real party in interest and that in the absence of waiver or congressional authorization, the action is barred by tribal sovereign immunity.

**CONCLUSION**

**{17}** On the basis of both tribal sovereign immunity and infringement on tribal sovereign authority, we affirm.

**{18}   IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JANE B. YOHALEM, Judge**